**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 18-26675 |
| Daniel Vega | ) | HON.  Carol A Doyle |
| | ) | CHAPTER 13 |
| DEBTOR. | ) | |

**NOTICE OF MOTION**

NOTICE OF MOTION TO: Thomas H. Hooper, 55 E. Monroe Street, Suite 3850, Chicago, IL 60603, via electronic court notification.

Patrick Semrad, The Semrad Law Firm, LLC, 20 S. Clark St, 28th Floor, Chicago, IL 60603.

Daniel Vega, 4558 W 77th Pl, Chicago, IL 60652.

See the attached Service List.

Please take notice that on September 20, 2022, at 9:30 a.m., I will appear before the Honorable Carol A. Doyle, or any judge sitting in that judge's place, and present the motion for sanctions, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-8287666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is **161 155 8289** and the password is **Doyle742**. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

## CERTIFICATE OF SERVICE

    The undersigned, an attorney, certifies that he served a copy of this notice and the attached motion, on each entity shown above at the address shown and by the method indicated on the list on September 7, 2022, via U.S. Mail from the mailbox located at 10258 S Western Avenue, Suite 210A, Chicago IL 60643.

    /s/ Steve Miljus
Feldman Garcia Leshinsky & Miljus, LLC
10258 S Western Avenue, Suite 210A
Chicago IL 60643
(312) 248-2781
smiljus@fglmlawgroup.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 18-26675 |
| Daniel Vega ) | HON. Carol A Doyle |
| ) | CHAPTER 13 |
| DEBTOR. ) | |

**MOTION FOR SANCTIONS**

Now comes Daniel Vega (Mr. Vega), by and through his attorneys, Feldman Garcia Leshinsky & Miljus, LLC (FGLM), and moves this Court for entry of an Order awarding appropriate sanctions, pursuant to 11 U.S.C. § 105, Federal Rules of Bankruptcy Procedure (FRBP) 9011, against Patrick Semrad and The Semrad Law Firm, LLC (Semrad Firm), and in support of this Motion, states as follows:

**FACTUAL BACKGROUND**

On June 10, 2022, Patrick Semrad and the Semrad Firm began filing orders to withdraw Steve Miljus (Mr. Miljus) and Rigoberto Garcia (Mr. Garcia) as counsel an estimated 2,750 times in thousands of bankruptcy cases, including the instant case. The orders were fraudulently titled as "agreed" orders and bore the unauthorized signatures of Mr. Garcia and Mr. Miljus, giving the appearance of motions and orders that had been filed in cooperation with Mr. Garcia and Mr. Miljus. In fact, the orders were never agreed to by Mr. Garcia or Mr. Miljus and the orders contained their signatures without their consent.

The events leading up to the filing of the orders in question began on May 17, 2022, when Mr. Garcia and Mr. Miljus advised Patrick Semrad of their intent to resign from their positions at the Semrad Firm and form their own law firm, FGLM. After their departure, they requested a client list from Patrick Semrad and attempted to work with him to send a joint letter notifying clients that they had left the Semrad Firm. Patrick Semrad provided a client list for Mr.

1

Miljus but refused to provide a client list for Mr. Garcia and would not agree to sending a joint letter to clients. FGLM used the client list provided by Patrick Semrad and mailed a unilateral letter to Mr. Miljus's clients, including Mr. Vega.

On May 27, 2022, a series of emails were sent between FGLM's attorneys and Patrick Semrad regarding the withdrawal from existing cases and providing notice to clients. After Patrick Semrad refused to provide Mr. Garcia his client list, Mr. Garcia requested that the Semrad Firm withdraw him from any cases he may have handled while he was an associate at the Semrad Firm (See attached Exhibit A, Mr. Garcia's email to Patrick Semrad). Mr. Miljus responded to the email chain and cited several reasons why Mr. Garcia's clients were entitled to notice of his departure from the Semrad Firm (see attached Exhibit B, Mr. Miljus's email to Patrick Semrad). Patrick Semrad rejected Mr. Miljus's position and responded, "I disagree".

On June 1, 2022, Mr. Garcia emailed Patrick Semrad to advise him that he agreed with Mr. Miljus's position (see attached Exhibit C, Mr. Garcia's final email to Patrick Semrad). There was no relevant further correspondence between Patrick Semrad and Messrs Garcia and Miljus.

On June 7, 2022, Mr. Miljus filed the first motion to substitute in this case (see Docket number 60). After the motion was filed, Mr. Miljus called and emailed Aaron Weinberg (Mr. Weinberg), an associate at the Semrad Firm, to advise him that Mr. Vega had retained FGLM, and a relevant motion was set for June 14, 2022. After the motion was filed, but before it was heard, Patrick Semrad and the Semrad Firm filed "Agreed Substitution of Attorney" orders to remove Mr. Garcia on June 10, 2022 (see attached Exhibit D, Agreed order Docket 61). A nearly identical order was filed to remove Mr. Miljus on June 13, 2022 (see attached Exhibit E, Agreed order Docket 62). The orders were never reviewed or agreed to by any attorney at FGLM and the orders contained the electronic signatures of both Mr. Miljus and Mr. Garcia without their consent. The filing of these agreed orders was not limited to this case. To FGLM's

2

knowledge, a similar order was filed an estimated 2,750 times by Patrick Semrad and the Semrad Firm.

On June 14, 2022, during the hearing for FGLM's Motion to Substitute in this case, the Court, confused by the conflicting motion and orders, brought the orders to the attention of Mr. Miljus and Mr. Weinberg. Mr. Miljus, unaware of the orders, reviewed the docket during the hearing and advised the court that he did not agree to the order, nor did he authorize the use of his signature on the order. The Court advised Mr. Weinberg that the orders were "troubling" and that they should be corrected as soon as possible.

After the hearing, Mr. Miljus met with Patrick Semrad, Michael Miller (Mr. Miller), an associate attorney at the Semrad Firm, and Mr. Weinberg. During their meeting, Patrick Semrad acknowledged that he filed the orders without the consent of Mr. Miljus or Mr. Garcia. Mr. Miljus advised the Semrad Firm attorneys that he wanted the orders withdrawn as they were inappropriate for two reasons: 1. He did not agree to the orders, nor did he authorize the Semrad Firm to use his signature; and 2. The agreed orders did not comply with local rules to withdraw as counsel.

The following week, on June 21, 2022, this Court heard a series of Motions to Substitute filed by FGLM, and Patrick Semrad appeared on behalf of the Semrad Firm. During the hearings, the Court brought the orders to Patrick Semrad's attention, but he did not offer an explanation for them. Instead, he acknowledged that the orders were signed and entered without the consent of Mr. Miljus or Mr. Garcia and advised the Court he would work with them to resolve the matter.

After the hearing on the 21st of June, FGLM unsuccessfully attempted to compel Patrick Semrad and the Semrad Law Firm to withdraw the orders. As a result of these difficulties, FGLM hired David Leibowitz (Mr. Leibowitz) to resolve the matter on its behalf. On July 5,

2022, Mr. Leibowitz emailed a demand letter to Patrick Semrad and the Semrad Firm (see attached Exhibit F, Demand Letter). The Demand letter explicitly addressed the orders at issue and stated the following: "To the extent not already done so, the Semrad Firm should withdraw all papers that have been filed containing purported electronic signatures of departing FGLM attorneys from Documents similar to those mentioned above." Over the next several weeks, despite Mr. Leibowitz's best efforts, Semrad refused to withdraw the fraudulent agreed orders.

On July 19, 2022, during the series of hearings for FGLM's Motion to Substitute, the issue of the orders was yet again brought to the attention of the Court after the Patrick Semrad and the Semrad Firm inexplicably filed a Motion to Substitute and remove Mr. Miljus from this case without the consent of the client. Patrick Semrad withdrew the motion and this Court yet again warned Patrick Semrad that his firm's conduct during the series of hearings had been less than appropriate.

On July 21, 2022, Mr. Miljus emailed Semrad's counsel, Jeffery Becker (Mr. Becker) and advised him that FGLM would be handling the matter moving forward, and reiterated the need to notify clients and withdraw the orders at issue. Over the next several weeks, Mr. Miljus spent hours emailing and calling Mr. Becker in an attempt to compel Patrick Semrad and the Semrad Firm to mail notice to clients and withdraw the false orders they filed. Patrick Semrad and the Semrad Firm did not comply with any of the requests.

On August 25, 2021, Mr. Miljus emailed Mr. Becker to make one last attempt to resolve the matter and stated the following: "Regarding the letters, they can get the list together and we can send them off jointly as we agreed by September 1st. If they can't get that done by the 1st of September, we will compile our own list and mail a unilateral letter to the clients who have not received them yet and resolve the thousands of orders they forged and entered with the court" (see attached Exhibit G, Mr. Miljus's email to Mr. Becker).

4

At the time of this filing, despite repeated requests made by FGLM, Mr. Leibowitz and this Court, Patrick Semrad and the Semrad Firm have not moved to withdraw the fraudulent orders they filed an estimated 2,750 times, including the two filed in the instant case.

## JURISDICTION

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## ARGUMENT

1. **Patrick Semrad and The Semrad Law Firm violated Rule 9011(b) when they affixed the signature of Mr. Garcia and Mr. Miljus without their consent to thousands of orders that were falsely titled as "agreed orders" and filed them with this court.**

Under Rule 9011(b), an attorney who presents to the bankruptcy court any "petition, pleading, written motion, or other paper" makes four certifications to the court. Three are certifications that the paper is not presented for an improper purpose, the legal contentions have a basis in the law, and the denials of facts are warranted by the evidence. Fed. R. Bankr.P. 9011(b)(1)-(2), (4). The fourth, applicable in this case, is a certification that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr.P. 9011(b)(3).

The certification in Rule 9011(b)(3) prohibits not only assertions of fact without sufficient support but also outright misstatements of fact. *In re Brent*, 458 B.R. 444, 457 (Bankr. N.D. Ill. 2011) ("Misrepresentations of the facts may obviously result in sanctions."); see, e.g., *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 651 (7th Cir.1992).

To be sanctionable, a misstatement or omission must be more than an innocent mistake; in making the misstatement or omission, the attorney must have been "culpably careless." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir.2005). To avoid sanctions,

5

then, the attorney's conduct must have been the conduct of a hypothetical reasonable attorney. *U.S. Bank Nat'l Ass'n v. Sullivan–Moore*, 406 F.3d 465, 470 (7th Cir.2005). An attorney's good faith belief that his statements were true is insufficient. *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 824 (7th Cir.2001).

In this case, both requirements to sanction pursuant to Rule 9011, false statements and culpable carelessness, have been met.

**a. False Statements**

The first requirement is satisfied as Patrick Semrad and The Semrad Firm made a false statement of fact to this Court when they filed an order to withdraw Mr. Garcia from this case on June 10, 2022, and Mr. Miljus on June 13, 2022. Prior to the filing of the agreed orders, there was communication between FGLM and Patrick Semrad regarding substitutions (see attached Exhibits A, B, C). While it is true, Mr. Garcia initially advised Patrick Semrad that he wanted to be withdrawn from cases with which he was associated while working at the Semrad Firm, he clearly and unambiguously retracted that request in an email on June 1, 2022, before the orders were filed. Neither Patrick Semrad or any other attorney at the Semrad Firm attempted to clarify Mr. Garcia's position, nor did they give him an opportunity to review the "agreed" order before it was filed, and they certainly did not have the authority to sign his name without his consent. Assuming, *arguendo*, that Patrick Semrad and the Semrad Firm mistakenly believed that Mr. Garcia agreed to the order, Mr. Miljus clearly did not agree to the orders nor authorized the use of his signature.

In this case, Patrick Semrad and the Semrad Firm filed the orders in question *after* Mr. Miljus filed his motion to substitute. The motion was noticed properly, and Mr. Miljus even provided additional courtesy notice by emailing and contacting Mr. Weinberg by telephone on

6

June 7, 2022. After receiving three separate notices in this case, Patrick Semrad and the Semrad Firm filed two false agreed orders on June 10, 2022 and June 13, 2022.

Moreover, Patrick Semrad has appeared in Court on several different occasions and has never once suggested that Mr. Miljus or Mr. Garcia ever authorized the use of their signatures or agreed to the orders that were entered in this Court. Rather, he has offered apologies to the Court and has stated that he will correct the issue but has not denied that the orders were fraudulent.

Based on the prior communication Patrick Semrad had with FGLM's attorneys and his statements made in Court on two separate hearings, it is clear that these orders were misrepresentations of fact. There is absolutely no reason for Patrick Semrad or the Semrad Law Firm to believe that Mr. Miljus and Mr. Garcia agreed to the orders filed in this case nor any of the other 2,748 cases where the order was filed. As such, false statements, the first requirement to sanction pursuant to Rule 9011(b)(3) has been satisfied.

**b. Culpable Carelessness**

The second requirement for sanctions under Rule 9011(b)(3), culpable carelessness, has clearly been satisfied as well. No reasonable attorney could have understood the email sent by Mr. Miljus and Mr. Garcia as agreeing to the entry of the orders in question, and certainly no reasonable attorney would ever sign opposing counsel's name to an order without their express authority.

In fact, the timing of these agreed orders suggests that this was more than an innocent mistake made by Patrick Semrad and the Semrad Law Firm. The orders were not immediately filed after Mr. Miljus and Mr. Garcia departed from the Semrad Firm. Rather, they were filed only after Mr. Miljus advised Patrick Semrad that Mr. Garcia's clients were entitled to notice a choice to retain his services at FGLM, in part, because he was the attorney of record.

7

Whether Patrick Semrad and the Semrad Firm intentionally filed these orders to prevent Mr. Garcia from giving his clients notice and an opportunity to retain his services at FGLM may be of critical importance with respect to the appropriateness of sanctions, but it is not relevant to the question of whether the second requirement of culpable carelessness has been satisfied. To be sanctionable, the conduct must simply fall short of a reasonable attorney, and the facts at hand easily satisfy that standard.

2. **FGLM substantially complied with the safe harbor provision of Rule 9011, and this Court has the inherent power to sanction pursuant to 105(a).**

Before a movant can file a 9011 motion it must follow a two-step procedural safeguard process. First, the movant must serve a copy of the proposed motion on the offending party. Second, the offending party then has 21 days to withdraw or correct the offending pleading. If the offending party does not, then the moving party can file the 9011 motion. Matrix IV, Inc. v. Am. Nat. Bank and Trust Co. of Chi., 649 F.3d 539, 552 (7th Cir. 2011). The Seventh Circuit allows a movant to substantially comply with the safe harbor rule without sending a copy of the proposed motion by instead sending an equivalent notice such as a warning letter notifying the offending party of the intention to seek 9011 sanctions. See Nisenbaum v. Milwaukee County, 333 F.3d 804, 808 (7th Cir. 2003) (finding that defendants' "letter" rather than "motion" constituted substantial compliance with Rule 11(c)(1)(A) because defendants alerted plaintiff to the problem and provided more than 21 days to rectify)

In this case, Mr. Leibowitz, on FGLM's behalf sent Patrick Semrad and the Semrad Firm a demand letter on July 5, 2022. The letter explicitly requested that the Semrad Firm "withdraw all papers that have been filed containing purported electronic signatures of departing FGLM attorneys from Documents similar to those mentioned above." FGLM alerted Patrick Semrad and the Semrad firm to the problems and provided 21 days to rectify the issues. It has been 64 days since the letter was sent and Patrick Semrad and the Semrad Firm have done nothing to

8

correct their misconduct. As such, FGLM has substantially complied with the Rule 9011's safe harbor provision.

Moreover, the Seventh Circuit has repeatedly held that the Court has the inherent power to issue sanctions and award attorneys' fees for litigation misconduct, independently of Rule 11, particularly if the expedited nature of proceedings made Rule 11 unavailable. In Methode Electronics, Inc. v. Adam Technologies, Inc., 371 F.3d 923, 927 (7th Cir. 2004), the Court stated:

> Rule 11 has not robbed the district courts of their inherent power to impose sanctions for abuse of the judicial system. In Chambers v. NASCO, Inc., 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Court was quite clear that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." The Court stated that there was "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanction for ... bad-faith conduct ...." At 46, 111 S.Ct. 2123.

See also, Mach v. Will County Sheriff, 580 F.3d 495, 502 (7th Cir. 2009) (affirming sanctions without compliance with Rule 11 procedures).

"A court may employ its inherent powers when a rule or statute also applies, particularly when the litigant's 'entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court' and the conduct was beyond the reach of the rules." *Goodvine v. Carr*, 761 Fed. Appx. 598, 601-02 (7th Cir. 2019) (affirming sanction of dismissal based on false affidavit). The issue in this case is not a mere baseless filing. Like *Goodvine v. Carr* where Goodvine filed a false document with the court, Patrick Semrad and the Semrad Firm filed a false order, and affixed the signatures of Mr. Garcia and Miljus without their consent. They have been repeatedly advised by this Court to rectify the issue they created. Despite several warnings and an abundant amount of time, they have yet to withdraw the erroneous orders. FGLM contends that they have complied with the safe harbor provision of Rule 9011. However, the false orders filed by Patrick Semrad and the Semrad Firm are also

9

sanctionable under the Court's inherent authority (*see In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000). Sanctions are justified under § 105(a) where the sanctioning court has clearly found that a litigant "intentionally abused the judicial process in an unreasonable and vexatious manner." Id. at 1047.

3. **Sanctions are appropriate due to the seriousness of the misrepresentations made by Patrick Semrad and the Semrad Firm, their pattern of misconduct and to deter future misconduct.**

FRBP 9011(c) says, [i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. Sanctions for violations of Rule 9011 may be both monetary and non-monetary but must "be limited to what is sufficient to deter repetition of [the attorney's] conduct or comparable conduct by others similarly situated." *Sullivan–Moore*, 406 F.3d at 471. A court enjoys broad discretion in determining the appropriate sanction. *Id.* In arriving at a sanction, the court should "reflect upon equitable considerations." *Brown v. Federation of State Med. Bds.*, 830 F.2d 1429, 1439 (7th Cir.1987). These include, but are not limited to, whether the misconduct was part of a pattern, whether the attorney has engaged in similar conduct in other litigation, what effect the misconduct had on the litigation process, whether the attorney is experienced in the area of law, and whether the conduct was willful or negligent.

Patrick Semrad and The Semrad Law Firm's misconduct was quite serious, far worse than a mere baseless motion that could have been withdrawn without consequence. Once uploaded to the docket, the orders *immediately* restricted FGLM's access to the trustee's online portal. The online portal provides vital and privileged case information, such as case payment history, and the balance that the trustee is holding on hand. FGLM depended on this restricted information to properly administer cases for clients who had retained FGLM and terminated the

10

Semrad Firm. Being improperly locked out as a result of the orders also frustrated FGLM's ability to properly advise clients who were uncertain as to whether they wanted to retain FGLM or remain with Semrad.  FGLM apprised the Chapter 13 Trustee, Thomas Hooper, of the situation and his office did their best to mitigate the issue created by Semrad, but it was a struggle to obtain necessary information in a timely manner.  The net result of Patrick Semrad and the Semrad Firm's misconduct was an increased burden on the trustee, FGLM and their ability to advise clients who were retained by FGLM.  Patrick Semrad and the Semrad Firm cannot simply unring the bell.

Worse yet, this Court has *repeatedly* advised Patrick Semrad and the other attorneys at the Semrad Firm to remove the order and correct the docket.  The Court advised Patrick Semrad and the Semrad Firm to withdraw the orders and correct the docket on June 14, 2022 and June 21, 2022. On July 19, 2022, it was brought to this Court's attention that Patrick Semrad and the Semrad Firm had yet to withdraw the orders.  The Court, in disbelief, described Patrick Semrad's conduct as "outrageous" and yet again advised him to withdraw the orders.

Patrick Semrad and the Semrad Firm have had 50 days to withdraw these orders since their conduct was aptly described as "outrageous" on July 19th but they have not withdrawn a single one.  The Court is permitted to take the parties' litigation history into account in determining whether sanctions are appropriate. In re Salem, 2017 WL 11607219, at 10 ("The Seventh Circuit has repeatedly recognized that a court is 'permitted to consider [a party's] past conduct in fashioning Rule 11 sanctions, as the decision to impose such sanctions and their form may be influenced by consideration of a party's past misconduct,'" citing Vollmer v. Publishers Clearing House, 248 F.3d 698, 710 (7th Cir. 2001).

Rather than heeding the Court's request to immediately withdraw the orders in question, they instead filed appearances in thousands of the same cases, including this case (see Docket 64

11

and 65) and then they inexplicably filed Motions to Substitute, without the client's consent, to remove FGLM as counsel in cases where FGLM was retained (see Docket 66). Additionally, they failed to timely comply with this Court's orders to pay FGLM. They have repeatedly forced this Court to waste its time in addressing their shortcomings.

The orders at issue are not without consequence to FGLM as it violates local rules. Rule 2091-1 provides, "An attorney of record may not withdraw, nor may other attorneys appear on behalf of the same party or as a substitute for the attorney of record, without first obtaining leave of court by motion, except that substitutions or additions may be made without motion where both counsel are of the same firm." These orders were entered after Mr. Garcia and Mr. Miljus left the Semrad Law firm. Consequently, an agreed order was insufficient to withdraw from the case. If left uncorrected, the order suggests that Mr. Miljus and Mr. Garcia have improperly agreed to being withdrawn from thousands of cases without first obtaining leave of the court by motion. This unnecessarily creates a liability for FGLM, and Mr. Miljus has repeatedly advised Patrick Semrad that the orders must be withdrawn to both correct the record and eliminate the liability they created by filing this order. His requests have been ignored.

FGLM has been patient with Patrick Semrad and the Semrad Firm in their attempt to resolve these issues. FGLM was forced to incur attorney's fees to resolve the matter, they have spent time and resources attempting to correct the issue and have needlessly wasted time overcoming the obstacles that Semrad has placed in the way of them attempting to represent the clients who had retained their services.

As such, FGLM seeks a sanction that would act as a deterrent to future misconduct: ordering Patrick Semrad and the Semrad Firm to withdraw the erroneous orders, and to compensate FGLM for the injury their misconduct has caused. FGLM requests reimbursement of their fees and expenses incurred including: (a) reimbursement of the attorney's fees paid to Mr.

Leibowitz, (b) fees and expenses related to objecting to the frivolous Motion to substitute filed in this case and several other cases, (c) fees and costs associated with preparing for and attending the hearings associated to the frivolous Motion to Substitute filed in this case and other cases, (d) fees and costs associated with time Mr. Miljus has spent attempting to resolve the matter with Semrad's counsel, Mr. Becker (e) fees and expenses incurred in connection with this Motion. FGLM can provide an affidavit of fees and detailed time entries once the Court orders that sanctions are appropriate. Additionally, FGLM seeks punitive damages of (a) four times the amount of compensatory damages as a result of Patrick Semrad and the Semrad Firm's misconduct, including but not limited to, signing the names of Mr. Miljus and Mr. Garcia without their consent, and (b) punitive damages of $1,000 per day, from the date this Motion is filed until the date all orders at issue have been properly withdrawn by Patrick Semrad and the Semrad Firm, and for any other relief this Court deems fair and proper.

      FGLM requests that sanctions be imposed jointly and severally against Patrick Semrad and The Semrad Law Firm, LLC.

Respectfully submitted,

/s/ *Steve Miljus*
Feldman Garcia Leshinsky & Miljus, LLC
10258 S Western Avenue
Suite 210A
Chicago IL 60643
(312) 248-3382